## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DEX MEDIA, INC., *et al.*, | ) | Case No. 16-11200(KG) |
| | ) | |
| Reorganized Debtors. | ) | |
| _____ | ) | |
| DEX MEDIA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. Proc. No. 16-51026(KG) |
| | ) | |
| YELLOW PAGES PHOTOS, INC., | ) | |
| | ) | |
| Defendant. | ) | **Re: Dkt No. 31** |
| _____ | ) | |

## OPINION

Yellow Pages Photos, Inc. ("YPPI") has returned to the Court[1] in a copyright infringement action, now against Dex Media, Inc. ("Dex Media") rather than SuperMedia, LLC ("SuperMedia"). Dex Media has moved to dismiss the Counterclaims YPPI brought and for judgment on the pleadings on its adversary complaint (the "Motion"), which YPPI opposes.

Dex Media raises "four independent reasons" for dismissal: claim preclusion, judicial estoppel, collateral estoppel and failure to state a claim for relief. YPPI counters

---

[1] YPPI initially filed its lawsuit against Dex Media in the District Court for the Middle District of Florida. Dex Media filed an adversary proceeding in the Court which less than a month earlier had issued a final decision in YPPI's lawsuit against Dex Media's predecessor corporation, SuperMedia, Inc.. In the adversary proceeding, Dex Media seeks a declaratory judgment that copyright infringement did not occur. The Court exercised jurisdiction over the adversary proceeding because of its knowledge and experience with YPPI and SuperMedia. Thereafter, YPPI filed its counterclaims (the "Counterclaims") in which it asserts its copyright infringement claim. For the sake of clarity, the Court will refer to the litigation involving SuperMedia as the "SuperMedia Litigation," and the present adversary proceeding as the "Dex Media Action."

that the parties are different and that the alleged infringement arose after the conclusion of the SuperMedia Litigation. The Court will address the parties' arguments after a discussion of the background and the facts.

## BACKGROUND

The Court previously presided over YPPI's copyright infringement action against SuperMedia in what it must describe as a contorted case. The parties drastically changed positions and the Court not only presided over two trials, but had to rule on a large number of motions. Although in one sense this is not the SuperMedia Litigation, the positions taken and the Court's rulings infect the present case and therefore it is necessary to summarize those positions and rulings. For a more detailed understanding of the SuperMedia case, those interested can review the docket of *Yellow Pages Photos, Inc. v. SuperMedia, Inc.*, Case Nos. 13-10546 and 15-50044.

The background begins on November 12, 2001, when Verizon Directories Corp. ("Verizon Directories") the predecessor to SuperMedia, entered into a Service Contractor Agreement (the "License Agreement") with a Florida company which was known as Yellow Pages Photos, Inc. (which the Court will refer to as "Old YPPI" for reasons explained below). Adv. Comp. Exhibit A. The License Agreement provided Verizon Directories with 100 CD's which each contained 50 stock images (the "Licensed Images"). Verizon Directories paid Old YPPI a total of $660,000 for the 100 CD's. Countercl., ¶ 6. The License Agreement granted Verizon Directories the perpetual right to use the images on the CD's for publication of directories in various media.

Two things happened in November 2006. First, Old YPPI changed its name to AdMedia Systems, Inc. ("AdMedia") and AdMedia thereby succeeded to Old YPPI's rights under the License. Adv. Compl ¶ 13. That same day, Trent Moore, the head of Old YPPI, formed a new Yellow Pages Photos, Inc. and AdMedia assigned its copyrights to the new YPPI. Thereafter, beginning in January 2007, YPPI registered the images with the United States Copyright Office in 50 image collections. Countercl. ¶ 22.

Also, in November 2006, Verizon Directories spun off its directory publication functions into Idearc Media Corp. ("Idearc") which succeeded to the rights of Verizon Directories under the License Agreement. Adv. Comp. ¶ 14. In July 2007, YPPI and Idearc agreed to amend the License Agreement to expand the purposes for the use of the License Agreement. Idearc's contractors became authorized "users" of the images. Adv. Compl. ¶ 15.

Idearc filed for bankruptcy on March 31, 2009, in the United States Bankruptcy Court for the Northern District of Texas. In the bankruptcy, the License Agreement was listed as an executory contract, to which there was neither any objection nor the filing of any claim relating to the License Agreement. Adv. Comp. ¶ 16. The bankruptcy court confirmed Idearc's plan on December 22, 2009, and also issued an order for the assumption of the License Agreement. Adv. Compl. ¶ 17. Idearc emerged from bankruptcy as SuperMedia, LLC. *Id.*

SuperMedia commenced a pre-packaged Chapter 11 case on March 18, 2013. Adv. Compl. ¶ 21. The plan, which the Court confirmed on April 29, 2013, and which

went effective on April 30, 2013, had SuperMedia emerging from bankruptcy as an indirect, wholly owned subsidiary of Dex Media. *Id.*

<u>The SuperMedia Litigation</u>

It is critically important for this decision on the Dex Media Action that the Court carefully note from the SuperMedia Litigation what it decided, what it did not decide, and the import of its decisions on the Motion. Dex Media has moved to dismiss and for judgment on the pleadings on the general basis that the SuperMedia Litigation precludes the Dex Media Action.

YPPI sued SuperMedia on May 30, 2013, alleging that SuperMedia had infringed on the Licensed Images. YPPI also filed a Motion to Compel Assumption or Rejection of Executory Contract (the "<u>Assumption Motion</u>") (Case No. 13-10545, D.I. 212) claiming that the License Agreement was an executory contract which Debtors had to assume or reject. The Court denied the Assumption Motion, including on reargument, finding that the License Agreement was fully paid and royalty free, there were no unperformed obligations and therefore the License Agreement was not an executory agreement. Case No. 13-10545. D.I. 280 at 8-9; and Case No. 13-10546, D.I. 20.

In addition to the Assumption Motion, YPPI had filed a motion for SuperMedia to allow and pay an administrative claim (the "<u>Admin. Claim Motion</u>"). The Court conducted a trial and after taking evidence held that: (1) third parties could use the Licensed Images under SuperMedia's supervision, but could not transfer the Licensed Images, (2) SuperMedia had transferred the Licensed Images, but (3) there was no evidence of any transfer during the 43 day administrative period. YPPI moved for

4

reconsideration of the Court's denial of the Admin. Claim Motion, which the Court denied.   In its ruling on reconsideration, the Court held again that there was no evidence of physical transfer of the Licensed Images by SuperMedia, and the merger, whereby SuperMedia became a subsidiary of Dex Media, did not result in a transfer. Case No. 13-10546. D.I. 293.

With the conclusion of the Admin. Claim Motion, the Court turned to the pre-petition time frame.   YPPI had filed a proof of claim for the pre-petition period. SuperMedia filed an adversary proceeding to object to the proof of claim. Adv. No. 15-50044.   In the adversary proceeding, SuperMedia amended its complaint, with the Court's permission, to allege that the transfers occurred earlier, in 2005 and 2006; and the Court gave YPPI permission to amend its proof of claim.

YPPI continued to claim that the License Agreement was a valid agreement, but in its Amended Proof of Claim now argued, in the alternative, that SuperMedia never assumed the License Agreement.   YPPI claimed that if, as SuperMedia now contended, its transfers of the Licensed Images began in 2005 and 2006, Idearc never cured any breaches existing when it commenced its bankruptcy case.   Therefore, SuperMedia did not assume the License Agreement and its use of the Licensed Images violated YPPI's copyright.   The YPPI Amended Proof of Claim proposed alternative theories of liability: (1) SuperMedia breached a valued License Agreement, or (2) the License was invalid and SuperMedia violated YPPI's copyright.

YPPI later abandoned the theory that SuperMedia failed to assume the License Agreement.  Instead, YPPI pursued the position it raised in the Amended Proof of Claim that SuperMedia breached the License Agreement.

The Court conducted a three-day trial from November 16 through 18, 2015, on YPPI's pre-petition claim.  Following the trial, on April 4, 2016, the Court issued its final decision on the merits of YPPI's Amended Proof of Claim.  In its decision, the Court ruled that:

1.      The transfers to AMDOCS and ASEC occurred in 2005 and 2006, prior to YPPI's registration of its copyrights.  YPPI therefore could not seek statutory damages or attorneys' fees under the Copyright Act.

2.      YPPI was not a party to the License Agreement and therefore could not enforce the License Agreement.

3.      The copyright infringement claim was not discharged in the Idearc bankruptcy, and survived the Idearc bankruptcy.

4.      SuperMedia transferred the Licensed Images to third parties (but not to Dex Media) and was therefore liable for copyright infringement.

STANDARD FOR JUDGMENT ON THE<br>PLEADINGS AND MOTION TO DISMISS

In the Motion, Dex Media seeks judgment on the pleadings for its Adversary Complaint, and to dismiss YPPI's Counterclaims.  On the motion to dismiss, the Court first accepts as true all material allegations of the Counterclaims and then determines if

the claimant may be entitled to relief under any "reasonable" reading of the Complaint. *Phillips v. County of Allegheny*, 515 F. 3d 224, 233 (3d Cir. 2008).

A motion for judgment on the pleadings is a method to dispose of claims where material facts are undisputed and the only disputes concern questions of law which can be decided by the court. *Jang v. Boston Scientific Scimed, Inc.*, 2011 WL 4527319, at *3 (D. Del. Sept. 30, 2011). However, the same standards as on a motion to dismiss apply, namely, the court must accept as true the factual allegations in the complaint or counterclaim and review those allegations favorably to the party making them. *Ferrell v. Cmty. Mgmt. Servs., LLC*, 2011 WL 1750452, at *1 (D. Del May 6, 2011).

<u>DISCUSSION</u>

The SuperMedia Litigation, from the Admin. Claim Motion through the pre-Petition claim, was costly, arduous and bitterly fought. YPPI now seeks to litigate against  Dex Media which YPPI claims is infringing on YPPI's copyright. Dex Media cries out that claim preclusion bars the litigation. Judicial estoppel and collateral estoppel also bar the litigation from proceeding according to Dex Media. YPPI argues that its suit against Dex Media raises all new allegations and is not subject to preclusion.

The SuperMedia Litigation was a war between the parties and involved many difficult rulings by the Court, including sanctions rulings. At the same time, the Dex Media Action involves Dex Media's post-SuperMedia Litigation actions, actions which could not have occurred during the SuperMedia Litigation. The Court must decide whether claim preclusion applies under the circumstances.

The question the Court must answer is whether or not the "bright line rule" which the Third Circuit uses is applicable.  The "bright line rule" simply stated is that claim preclusion is not to be applied to events post-dating the filing of the complaint in the initial lawsuit.  That is the holding in *Morgan v. Covington Township*, 648 F. 3d 172, 177-78 (3d Cir. 2011), where the Third Circuit, joining five other courts of appeals, ruled that "*res judicata* does not bar claims that are predicated on events that postdate the filing of the initial complaint . . . ." *Id.* at 178.

Despite the *Morgan v. Covington Township* holding in 2011, the Court confronts *Sims v. Viacom, Inc.*, 544 Fed. App'x 99 (3d Cir. 2013) which is deserving of expanded discussion because it limits the "bright line rule" and applies to the facts present here. In *Sims*, the plaintiff brought three lawsuits contending that defendant Viacom had infringed his idea for a reality television show.   The show which was aired was "Charm School."  In 2009, Sims sued and the district court granted summary judgment in favor of Viacom.  Sims filed a second lawsuit in 2011 which the district court dismissed. Then, two days following the dismissal of the second lawsuit, Sims sued again, for the July 2009 season of "Charm Girls" and the February 2009 season of another television show, "From G's to Gents."   The Third Circuit ruled that the district court properly applied *res judicata* in dismissing the third lawsuit, even though Sims argued that he could not have brought suit because the 2009 season did not exist when the first case was pending.  The Third Circuit applied a "broad view" and found that there was an "essential similarity" of the claims.  *Id.* at 102.  The Third Circuit did not apply a "bright line rule" because the premise of the third lawsuit was the same as in the first two

8

lawsuits which had been dismissed.  The Third Circuit found that the 2009 seasons of the two shows were "part of a series connected transactions" and affirmed the dismissal of the third lawsuit.  *Id.*

The Court finds that the present lawsuit against Dex Media is part of a "series of connected transactions" and for the reasons which follow satisfies the requirements for a finding that *res judicata* applies.  The Court also finds that judicial estoppel and collateral estoppel bar the Dex Media Action.

<u>Claim Preclusion</u>

A final judgment on the merits "precludes" the relitigation of issues that were litigated or could have been asserted even if the plaintiff names other parties, seeks different relief or raises a different theory of recovery.  *Sims v. Viacom, Inc.,* 544 F. App'x 99, 101 (3d Cir. 2013); *Sheridan v. NGK Metals Corp.,* 609 F. 3d 239, 261 (3d Cir. 2010). Claim preclusion requires three matters: "(1) a final judgment on the merits in a prior suit involving, (2) the same parties or their privies, and (3) a subsequent suit based on the same cause of action." *Sims v. Viacom,* 544 App'x at 101.

In the SuperMedia Litigation, the Court did issue a final order and entered judgment in favor of YPPI in the sum of $303,210.  Adv. No. 15-50044. D.I. No. 200. Also, the parties or their privies appear in both the SuperMedia Litigation and the Dex Media Action.  YPPI is the copyright claimant in both proceedings and Dex Media is a close privy of SuperMedia which was the defendant in the prior proceeding. SuperMedia is a wholly owned subsidiary of Dex Media which justifies a finding of privity.  *Lubrizol Corp. v. Exxon Corp.,* 929 F.2d 960, 966 (3d Cir. 1991).  Finally, the claims

in both actions are similar if not identical.  What is the same is the main parties, the Licensed Images, the unlawful transfers and the alleged infringing advertisements. What is different is the theory of liability that YPPI now asserts.  YPPI now alleges that the License Agreement was not assumed in Idearc's bankruptcy and that "no rights under the [License Agreement] remained . . . ."  However, in the SuperMedia Litigation YPPI raised but abandoned its theory that SuperMedia did not assume the License Agreement.  Abandoning a claim does not negate claim preclusion which is based on what was or could have been asserted.  *SupplyOne, Inc. v. Triad Packaging, Inc.*, 2014 WL 3676524, at *5 (E.D. Pa. July 24, 2014).

YPPI argues that the Counterclaims raise issues that it did not raise in the SuperMedia Litigation and involves facts that occurred after the SuperMedia Litigation. YPPI argues that in the Counterclaims it raises post-SuperMedia Litigation claims which are not barred by claim preclusion.  *Donaldson v. Bernstein*, 104 F.3d 547, 555 (3d Cir. 1997).  Instead, YPPI is bringing a direct copyright infringement claim based on publication of advertisements that contain Licensed Images.  As such, according to YPPI, claim preclusion simply does not control events that post-date the original action. *Morgan v. Covington Township*, 648 F. 3d at 177-178.  Further, YPPI argues that claim preclusion operates differently in bankruptcy actions.

With respect to the argument that claim preclusion is different in a bankruptcy action, the Court can understand that argument but it does not apply here.  The Dex Media Action does not involve bankruptcy issues.  The case, or adversary proceeding, is

a copyright infringement matter.  The argument that bankruptcy actions are different does not work.

Similarly, YPPI's argument that the instant case involves a different legal theory and a different time does not persuade the Court that claim preclusion does not apply. *Res judicata* bars claims that were brought or could have been brought in the previous litigation.  *Elkadrway v. Vanguard Group, Inc.*, 584 F. 3d 169, 173 (3d Cir. 2009); and *Post v. Hartford Ins. Co.*, 501 F. 3d 154 (3d Cir. 2007).

YPPI did assert in the SuperMedia Litigation, in the alternative, both that the License was assumed and that it was not assumed.  In the Amended Proof of Claim it submitted, YPPI specifically claimed that SuperMedia's predecessor entities transferred the Licensed Images before Idearc's effective date which breached the License Agreement and therefore Idearc did not assume the License Agreement.  Thus, according to the Amended Proof of Claim, any use of the Licensed Images by SuperMedia was a violation of YPPI's copyrights.  Amended Proof of Claim,  ¶¶ 18 and 26.  Although YPPI abandoned the claim that SuperMedia's use of the Licensed Images was unlicensed, YPPI is barred from relitigating the theory, since YPPI could have but did not pursue the abandoned claim.  *Rouse v. II-VI, Inc.*, 2008 WL 2914796), *aff'd*, 2009 WL 1337144 (3d Cir. May 14, 2009).  The fact that the claims here address a different and later time period does not save the present claims.  It is the "essential similarity" of events that brings into play the claim preclusion.  The identical factors appear in both the SuperMedia Litigation and the Dex Media Litigation: the same parties, the same

Licensed Images, the same copyrights, the same chain of events, and the same course of dealing. Trying the Dex Media case would be a retrial of the SuperMedia Litigation.

The Dex Media Action does, of course, allege events that occurred after the SuperMedia Litigation. The reason *res judicata* bars the Dex Media Action is that the claims are based on events that pre-date the filing of the SuperMedia Litigation. Those events are Idearc's alleged failure to assume the License Agreement that happened in 2009, years before the filing of the SuperMedia Litigation and the Dex Media Action.

YPPI also argues that SuperMedia was the defendant in the SuperMedia Litigation and Dex Media is the defendant in the Dex Media Action. The different parties in the different proceedings does not matter, since naming different parties does not inhibit claim preclusion. *Sheridan v. NGK Metals Corp.*, 609 F. 3d 239, 261 (3d Cir. 2010) (for claim preclusion, the addition of more parties does not change "the essence" of the cause of action). Similarly, the fact that the Counterclaims in the Dex Media Action do not contain a breach of contract claim also does not defeat claim preclusion. *Sims*, 544 F. App'x at 102. Finally, YPPI raised and then abandoned in the SuperMedia Litigation that there was a failure to assume the License Agreement. YPPI cannot raise the claim in its new lawsuit against Dex Media. Accordingly, *res judicata* applies and bars YPPI's Counterclaims. The Court will grant Dex Media judgment on the pleadings.

## Judicial Estoppel

YPPI first alleged that the License Agreement between SuperMedia and YPPI was valid and enforceable. Later, YPPI asserted that there was a failure to assume the

License Agreement because Idearc breached the License Agreement in 2005 and 2006 – something YPPI knew had occurred before the conclusion of the SuperMedia Litigation. However, YPPI subsequently abandoned the "failure to assume" claim.  Now, YPPI is reasserting the claim that Dex Media has no rights under the License Agreement.  YPPI cannot flip-flop its position.  *Krystal Cadillac – Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F. 3d 314, 319 (3d Cir. 2003).  Similarly, during the trial in the SuperMedia Litigation, YPPI introduced into evidence the print ads over SuperMedia's objection. YPPI did so, however, not to show infringement but as evidence of the value of the print ad images.  Nov. 18, 2015 Trial Tr., 166:15-170:25.  The inconsistent positions in disregard of prior statements is improper.  The reversal of positions requires the Court to apply judicial estoppel and grant Dex Media judgment on the pleadings.

### Collateral Estoppel

Collateral estoppel bars the relitigation of an issue of fact or law that has been litigated.  *Wallace v. United Parcel Serv.*, 387 F. App'x 127, 128 (3d Cir. 2010).  It applies when "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Heinglein v. Colt Indus. Operating Corp.*, 260 F. 3d 201, 209 (3d Cir. 2001) *quoting Raytech Corp. v. White*, 54 F. 3d 187, 190 (3d Cir. 1995).  Here, YPPI's Counterclaims depend on two issues: (1) that the License Agreement was not executory, and (2) there was a transfer of the Licensed Images to Dex Media.

It is abundantly clear that the Court adjudicated both of these issues, and that the determination was necessary to the Court's decision.  First, the Court held that the License Agreement was not an executory contract because there were no unperformed obligations. Case No. 13-10545. D.I. No. 280 at 9.  The Court also held that there was no physical transfer of the Licensed Images to Dex Media, that any transfer occurred as the result of the merger.  The finding that there was no transfer was necessary to the Court's denial of YPPI's Admin. Claim Motion.  Indeed, it was the reason that the Court denied the Admin. Expense Motion – a transfer would have resulted in the Court granting the Admin. Claim Motion.  YPPI's Counterclaims are based on its allegation that SuperMedia transferred the Licensed Images to Dex Media.  YPPI was ably represented and failed twice to establish the transfer occurred.  YPPI is therefore collaterally estopped from establishing two elements which are essential to its Counterclaims.  *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. (UAW) v. Visteon Corp.*, 2015 WL 4126742 at *5 (D. Del. July 9, 2015) (issue litigated where part of substantive briefing and testimony offered at hearing); *Acierno v. Haggerty*, 2005 WL 3134060, at *8 (D. Del. Nov. 23, 2005) (issue preclusion barred claim where plaintiff sought a "second bite at the apple").  Accordingly, the Court finds that the Dex Media Action is barred by collateral estoppel resulting in the Court granting Dex Media the judgment on the pleadings.

<u>Failure to State a Claim</u>

Dex Media has moved to dismiss the Counterclaims on the ground that they fail to state a claim.  *See* Federal Rule of Civil Procedure 12(b)(6).  The Court has found that *res judicata*, collateral estoppel and judicial estoppel are bars to the Dex Media Action proceeding.  The Court will at this time deny the motion to dismiss.

Dex Media argues that "YPPI does not allege any facts explaining how Dex Media acquired the Licensed Images; how Dex Media is 'using' the images; what that purported 'use' entails; when the unauthorized use allegedly began; or whether the 'Dex Media Infringing' ads are or are not SuperMedia ads."  Motion, page 32.  Dex Media also complains that the second Counterclaim is "threadbare," including failing to identify the Dex Media Outsource Companies, or how Dex Media induced them to infringe.  The allegations of the Counterclaims are "devoid of any factual support," says Dex Media.  Motion, page 32.  Therefore, YPPI's allegations are "patently unreasonable, 'unwarranted,' . . . and self-evidently false."  Motion, page 33.  Dex Media also points to the Court's findings in the SuperMedia Litigation that (1) SuperMedia stopped using the Licensed Images in June 2011 and removed the Licensed Images from its system; (2) SuperMedia collected the CD's with the Licensed Images from its contractors; and (3) only pre-existing advertisements contained the Licensed Images. Case No. 13-10546, D.I. 220 at 21-22.

YPPI counters the arguments with its own.  YPPI posits that it must prove only two elements to establish copyright infringement: (1) the claimant's ownership of a valid copyright, and (2) a defendant's copying of the original work.  *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361.  Answering Brief, page 25.

YPPI also asserts the view that because SuperMedia or its predecessors breached the License Agreement, Dex Media is operating devoid of the License Agreement.  YPPI is overlooking the "cure" that the Court imposed, i.e., the judgment of $303,210.  The License Agreement for which Verizon paid $660,000 has never been rejected and therefore "remains intact and property of the estate."  *In re Crescent Oil Co., Inc.*, 2010 WL 2721878, at *2 (Bankr. D. Kan. July 8, 2010).  There is no implied rejection of the License Agreement.  *Id.*  As property of SuperMedia's estate, "the confirmation of a plan vests all of the property of the estate in the debtor," or in Dex Media. 11 U.S.C. § 1141(b).  Property of the estate includes the License Agreement.  See also *In re Day*, 208 B.R. 358, 368 (Bankr. E.D. Pa. 1997) ("It has long been the rule in bankruptcy that an executory contract that is neither assumed nor rejected continues in place between the parties, passing through the bankruptcy to the reorganized debtor.").  Although the License Agreement was and is not executory, the foregoing cases and many more make it clear that the License Agreement remains in full force and effect, as the License Agreement was never rejected or abandoned.

Despite the foregoing, in the absence of estoppel the Court finds that YPPI has stated a bare-bones cause of action for infringement. YPPI has met the burden of stating a plausible claim. Accordingly, the Court denies the dismissal of the Dex Media Action on the ground that the Counterclaims fail to state a claim.

## CONCLUSION

The Court finds in favor of Dex Media and against YPPI on the motion for judgment on the pleadings with respect to *res judicata*, judicial estoppel and collateral estoppel. The Court denies the motion to dismiss. The Court will issue an Order.

Date: January 19, 2017

KEVIN GROSS, U.S.B.J.